KENNETH PINESCHI, Plaintiff-Appellee, v. ROCK RIVER WATER RECLAMATION DISTRICT, Defendant-Appellant.

Second District    No. 2—02—1337

Opinion filed March 9, 2004.

Michael B. Kilgallon, of Kilgallon & Carlson, of Chicago, for appellant.

Mark A. Rouleau, of Rockford, for appellee.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, the Rock River Water Reclamation District, appeals the trial court's denial of its action under section 2—1401 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—1401 (West 2000)) to vacate a default judgment in favor of plaintiff, Kenneth Pineschi. We affirm.

On June 27, 2002, plaintiff filed a six-count complaint alleging the following. Plaintiff owns a house and lot at 6263 Vicksburg Road in Rockford's Vicksburg subdivision. On July 7, 2001, defendant's agents performed maintenance on the subdivision's sewer system. The work altered the flow of water and caused black water and fecal matter to back up onto plaintiff's lot and into the basement of his home. As a result of the flooding, plaintiff and his family had to evacuate their home for several days and spent $11,168.22 on alternative housing and repairing the damage. The complaint sought this amount plus attorney fees and costs.

The complaint advanced six theories of recovery. Count I alleged that defendant was negligent in cleaning out the sewer from the higher-pitched north manhole to the lower-pitched south manhole and in failing to guard against the flooding. Count II sounded in trespass. Count III claimed that defendant created a nuisance and asked the trial court to enjoin defendant from discharging materials onto plaintiff's property. Count IV sought damages under section 19 of the

Metropolitan Water Reclamation District Act (the Act) (70 ILCS 2605/19 (West 2000)). Counts V and VI alleged a taking of plaintiff's property and sought compensation under, respectively, the fifth amendment to the federal constitution (U.S. Const., amend. V) and article I, section 15, of the state constitution (Ill. Const. 1970, art. I, § 15).

A summons signed June 27, 2002, informed defendant that it was required to answer the complaint by July 23, 2002, or a default judgment would enter against it. The return of service stated that a deputy sheriff served the "Sanitation District of Rockford a/k/a Rock River Water Reclamation Dist" by delivering a copy of the complaint and summons to Eileen Loney, defendant's agent, at 9:40 a.m. on July 1, 2002, at 3333 Kishwaukee Street. The return described Loney as a 52-year-old white female.

Defendant did not answer the complaint by July 23, 2002. On August 1, 2002, after a hearing, the trial court awarded plaintiff a default judgment of $12,523.25. We note that the record contains no transcript of the hearing. On August 23, 2002, plaintiff mailed defendant a copy of the judgment.

On September 18, 2002, defendant filed its "Motion to Vacate Default Judgment." The motion to vacate asserted that the trial court lacked jurisdiction to enter the judgment because defendant was not properly served. Alternatively, the motion sought discretionary relief under section 2—1401 of the Code. Attached to the motion were the affidavits of Eileen Loney and Kirk Gullikson.

Loney's affidavit, signed September 16, 2002, stated as follows. Defendant is a separate municipal corporation and is "not formally known as the Sanitary or Sanitation District of Rockford." As defendant's executive services coordinator, Loney accepts service of mortgage foreclosures and summonses on defendant. Her office is located at 3333 Kishwaukee Street in Rockford. She is a Caucasian female and was born on July 11, 1938. Loney did not recall receiving a summons or complaint on July 1, 2002, in this case. A check of defendant's computer records did not reveal that a summons or complaint had been received. Under standard office procedure, had Loney received such a document, it would have been "put on the computer" and forwarded to defendant's claims company. Loney did recall that, at the end of August 2002, she received a copy of the August 1, 2002, judgment and forwarded it to the claims company.

Gullikson's affidavit stated as follows. He is a machine operator for defendant. On the morning of July 7, 2001, Gullikson and Lee Smith went to plaintiff's home "due to a complaint of a sewer main back up." The sewer was serviced by a street manhole north of the house, and the sewer main ran from there south to a manhole within

a park area. The development was new and the street had not yet been paved. Plaintiff complained that he had "water around the floor drain." Gullikson inspected the north manhole and discovered that water had accumulated, meaning that the line was blocked downstream. After checking the manhole in the park south of plaintiff's property, Gullikson saw that the line there had minimal water flow and no accumulated water. Gullikson concluded that the block in the sewer main line was between the two manholes.

Gullikson's affidavit further stated that the standard procedure to clear the type of block he found was to use a "Vactor water jet" from a manhole that the "Vactor truck" can reach. Because only the north manhole was so accessible, Gullikson used it and inserted the water jet nozzle into the sewer main. Clearing the main sewer line with the water jet was the "proper technology" for this type of task, and Gullikson would use it again under the same circumstances. Defendant's only alternative would have been to excavate the line, dig up the sewer, and physically replace it.

After checking to see how much of the hose had been inserted into the sewer main, Gullikson activated the water jet. The water in the manhole receded, showing that the main had been cleared. However, plaintiff complained that more water had entered his basement during the operation. Gullikson and Smith went to plaintiff's basement. There was some water, but it was "draining down the floor drain as it should have, indicating that the line had been cleaned successfully." Gullikson reexamined the south manhole and saw what looked like pieces of drywall or plaster. He concluded that someone had introduced construction debris, causing the sewer main to become blocked.

After receiving the parties' written arguments, the trial court denied defendant's motion to vacate the default judgment. Defendant timely appealed. On appeal, defendant does not now assert that the default judgment is void for lack of proper service. Instead, defendant maintains that the trial court abused its discretion when it refused to vacate the default judgment. Defendant relies on several considerations that, in its view, entitle it to relief under section 2—1401 of the Code. These are that (1) doubts remain that defendant was properly served with the summons and complaint; (2) defendant established a meritorious defense to each of the complaint's theories of recovery; (3) the Act's provision for awarding attorney fees must be strictly construed, casting doubt on the trial court's fee award; and (4) plaintiff did not give defendant fair or timely notice that the default judgment had been entered. We shall discuss these contentions in the context of analyzing whether defendant met the prerequisites for section 2—1401 relief.

Plaintiff has moved to strike defendant's third argument, relating to the construction of the Act's provision for attorney fees. Plaintiff asserts that this argument was never raised at the trial level and may not be raised for the first time here. Defendant filed an objection to plaintiff's motion to strike, and we ordered the motion and objection taken with the case. We now deny the motion, as defendant's argument relates to the general issue of whether the entry of the default judgment was equitable. In any event, as we shall explain, the challenged argument lacks merit.

■ To obtain relief under section 2—1401 of the Code, a petitioner must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the trial court in the original action; and (3) due diligence in filing the petition for relief under section 2—1401. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986); *People v. Waters*, 328 Ill. App. 3d 117, 127 (2002). Whether to grant the petition is committed to the trial court's discretion, and the trial court's decision will be upheld absent an abuse of that discretion. *Smith*, 114 Ill. 2d at 221. We believe that, although defendant filed the motion to vacate promptly, the trial court could reasonably conclude that (1) defendant did not have a meritorious defense to the suit, and (2) defendant was not duly diligent in the original action. For clarity, we first explain the second conclusion.

Of the arguments that defendant presents on appeal, only the first relates to whether defendant displayed due diligence in the original lawsuit. This argument is somewhat equivocal. Defendant maintains that circumstances cast doubt on the trial court's finding that defendant was properly served in the original litigation. However, defendant does not actually assert that the trial court's finding of proper service was erroneous, and defendant does not ask us to vacate the default judgment for lack of personal jurisdiction. Instead, defendant appears to contend only that residual doubt about the efficacy of the service militates in favor of vacating the default judgment.

We are hard-pressed to see the logic of defendant's argument. Either defendant was properly served, as the trial court found, or it was not. There is no middle ground. See *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 109 (2002) (acknowledging that strict compliance with statutes governing service of process on public entities is required). If service was satisfactory, then there is no reason to conclude that defendant was diligent in handling plaintiff's lawsuit. Defendant deserves no relief merely because the trial court's finding that service was proper was based on close evidence rather than overwhelming evidence.

In any event, defendant has not convinced us that the issue of proper service was a close one, much less that the trial court erred in finding that service was proper. The return of summons is *prima facie* proof of proper service; that proof can be overcome only by clear and convincing evidence. *Winning Moves, Inc. v. Hi! Baby, Inc.*, 238 Ill. App. 3d 834, 838 (1992). Here, the return of service states that Eileen Loney, defendant's agent, was served on July 1, 2002, at 3333 Kishwaukee Street in Rockford. Defendant concedes that Loney is its agent for accepting service of process and that her offices are located at the given address. Defendant, however, notes that the return describes defendant as the "Sanitation District of Rockford a/k/a Rock River Water Reclamation Dist[rict]" even though defendant is an entity separate from the sanitation district. We simply fail to see what difference this formal error makes. Also, defendant stresses that the return gives Loney's age as 52 even though she was actually 64. Again, this error is not particularly remarkable, and defendant does not explain why it impeaches the return of service. Defendant does not assert that anyone at its offices other than Ms. Loney accepted service or whether, if so, that fact would make any difference.

Finally, although Loney stated that she did not recall receiving the summons and that a check of the office computer did not reveal that the summons and complaint were received, these assertions do not clearly and convincingly rebut the *prima facie* case that the return of service made. A person's mere testimony that she was not served is insufficient to overcome the presumption of service. *Freund Equipment, Inc. v. Fox*, 301 Ill. App. 3d 163, 166 (1998). *A fortiori*, Loney's statement that she did not *remember* being served is hardly compelling. Finally, that the transaction was not recorded on defendant's computer is far from clear and convincing evidence that defendant was not duly served with process.

Taken separately or cumulatively, defendant's attacks on the service of process in the original action are not persuasive. Thus, defendant failed to rebut the presumption that it was properly served in the original action. Accepting as we must the finding that defendant was duly served with plaintiff's complaint, we must conclude that defendant did not show that its failure to appear or answer resulted from anything other than a lack of due diligence. This lack of diligence in the original action was a sufficient reason for the trial court to deny defendant relief under section 2—1401 of the Code.

We also hold that, contrary to defendant's second contention on appeal, defendant did not establish a meritorious defense to the underlying action. Defendant recognizes that, excluding the complaint's conclusional reference to nuisance, plaintiff relied on four

theories of recovery: (1) negligence; (2) trespass; (3) the Act; and (4) a taking under the federal and state constitutions. Illinois takings law appears to track federal takings law insofar as pertinent here, so we will treat these two grounds as a single theory of recovery. Defendant asserts that Gullikson's affidavit and the case law disclose a meritorious defense against each theory of recovery.

We agree with defendant that Gullikson's affidavit raises a fair question of whether defendant was negligent. Also, the law is clear that, absent proof of negligence, plaintiff could recover for trespass only if he established that defendant's agents knew to a substantial certainty that their actions would result in the entry of the foul matter onto plaintiff's property. See *Dial v. City of O'Fallon*, 81 Ill. 2d 548, 554-55 (1980). Plaintiff's complaint does not allege any such knowledge or any facts that would compel an inference of such knowledge. Thus, defendant has alleged the existence of a meritorious defense to the negligence and trespass counts of plaintiff's complaint.

However, we do not believe that defendant has established that it has a meritorious defense to either the count of the complaint based on section 19 of the Act or the counts based on the takings clauses. Section 19 provides:

"Every sanitary district shall be liable for all damages to real estate within or without such district which shall be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvement under the provisions of this act ***. And in case judgment is rendered against such district for damage, the plaintiff shall also recover his reasonable attorneys' fees to be taxed as costs of suit: Provided, however, it shall appear on the hearing of plaintiff's motion to tax such attorney's [*sic*] fees, that the plaintiff notified the trustees of such district, in writing, at least 60 days before suit was commenced ***." 70 ILCS 2605/19 (West 2000).

To recover under this section, a plaintiff need not prove that the defendant district was negligent. *Jones v. Sanitary District of Chicago*, 252 Ill. 591, 604 (1911). Defendant concedes that plaintiff's real estate was damaged by the overflow from defendant's sewer, which is a "channel" or "other improvement." However, defendant maintains that section 19 does not apply because the damage resulted from the repair of the sewer and not its "construction, enlargement or use." 70 ILCS 2605/19 (West 2000). We are unpersuaded by defendant's distinction. When defendant's agents cleared the sewer main by pumping water into it, restoring the flow of water, they were "using" the sewer system and were also restoring it to its full normal "use." To accept defendant's reading of section 19 of the Act would arbitrarily deny a

landowner the right to recover for harm that is essentially indistinguishable from other harm that is compensable. We presume that the legislature did not intend inconvenience, injustice, or absurdity, and we will favor an interpretation that renders a statute reasonable and sensible over one that makes the statute illogical or absurd. *Garcia v. Nelson*, 326 Ill. App. 3d 33, 38 (2001). Accordingly, we will not construe the Act so narrowly as to effect the arbitrary preference that defendant's construction would create.

Defendant also contends that it raised a meritorious defense to the award of attorney fees in plaintiff's suit. Defendant's argument, the third of the considerations that it raises against the judgment, consists of the observation that section 19 provides for awards of attorney fees (see 70 ILCS 2605/19 (West 2000)), combined with citations to *Scholtens v. Schneider*, 173 Ill. 2d 375, 384 (1996), and *In re Estate of Dyniewicz*, 271 Ill. App. 3d 616, 628 (1995). These opinions do state the "American rule" that, absent a specific fee-shifting statute, parties generally must pay their own attorney fees. However, the pertinence of these citations is unclear, as section 19 is undoubtedly a fee-shifting statute and defendant would need to establish that section 19 does not allow plaintiff to recover fees here. Yet defendant does not directly so contend. Instead, defendant seems only to suggest that, for reasons not specified, the statute might not entitle plaintiff to fees in this case. Because defendant's argument is undeveloped and unsupported by pertinent authority, it is waived. See *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991). Therefore, we conclude that defendant has not alleged a meritorious defense to the award of attorney fees under section 19 of the Act.

Further, defendant has not established a meritorious defense to plaintiff's claim that he is entitled to recover for the taking of his property. See U.S. Const., amend. V; Ill. Const. 1970, art. I, § 15. Although the Illinois Constitution also requires just compensation when property is "damaged" for public use (Ill. Const. 1970, art. I, § 15), we note that plaintiff did not plead this theory of recovery. The affidavit attached to plaintiff's complaint states that defendant's acts caused so much harm that plaintiff and his family were forced to evacuate their home for several days. Nothing in defendant's motion to vacate rebuts this statement. Thus, we must assume that, as a result of the direct physical invasion of his property, plaintiff was deprived of any use of that property for several days.

This deprivation was a taking of plaintiff's property. As one reviewing court has stated, "If government makes your house uninhabitable, that is a taking of your property even if you retain a clear title." *Reed v. Village of Shorewood*, 704 F.2d 943, 949 (7th Cir. 1983); see also

*Barbian v. Panagis*, 694 F.2d 476, 483-85 (7th Cir. 1982). That is what happened here. Although the deprivation that plaintiff suffered was not permanent, a temporary taking is as subject to just compensation as is a permanent one. *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 318, 96 L. Ed. 2d 250, 266, 107 S. Ct. 2378, 2387-88 (1987).

Defendant maintains that its actions did not result in a taking because it did not intend to deprive plaintiff of the use of his property. However, it is simply not the law that only intentional appropriations of property are constitutionally actionable. Compensation is required when the noise and disruption from airplane overflights render property essentially unusable (*Griggs v. County of Allegheny*, 369 U.S. 84, 7 L. Ed. 2d 585, 82 S. Ct. 531 (1962); *United States v. Causby*, 328 U.S. 256, 90 L. Ed. 1206, 66 S. Ct. 1062 (1946)) and, especially pertinent here, when the construction or operation of public works results in the deposit of water or earth onto property, thereby destroying or impairing the property's usefulness (*Pumpelly v. Green Bay & Mississippi Canal Co.*, 80 U.S. (13 Wall.) 166, 20 L. Ed. 557 (1872); *Horn v. City of Chicago*, 403 Ill. 549, 554 (1949); *People ex rel. Peters v. O'Connor*, 311 Ill. App. 3d 753, 759-60 (2000)).

In sum, we hold that, in addition to failing to establish that it acted with due diligence in the original action, defendant did not show the existence of a meritorious defense to the counts of plaintiff's complaint that were based on the Act or on the federal and state constitutional takings clauses. Because defendant failed to establish a necessary element for section 2—1401 relief, the trial court's judgment must be affirmed.

Defendant's final argument on appeal is that plaintiff failed to notify defendant promptly that a default judgment had been entered. This establishes only that defendant acted with due diligence after the default judgment was entered. We have already agreed with defendant that it acted with due diligence after the judgment was entered, but this means only that defendant met one of the three prerequisites for section 2—1401 relief. Having failed to satisfy the other two prerequisites, defendant was not entitled to the relief it sought. Therefore, we hold that the trial court did not abuse its discretion when it refused to vacate the default judgment for plaintiff.

The judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

O'MALLEY, P.J., and KAPALA, J., concur.